UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOEL B.,[1] *o/b/o Melissa B. (deceased)*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:21-cv-01894-MJD-SEB ) |
| KILOLO KIJAKAZI, | ) ) ) |
| Defendant. | ) ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Melissa B. died in October 2020. Joel B., who was Claimant's husband at the time of her death, requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

## I. Background

Claimant applied for DIB and SSI in April 2019, alleging an onset of disability as of May 1, 2017. [Dkt. 12-5 at 2.] Claimant's applications were denied initially and again upon reconsideration, and hearings were held before Administrative Law Judge Teresa Kroenecke ("ALJ") on July 30, 2020, and August 25, 2020. [Dkt. 12-2 at 39, 70.] On September 22, 2020, ALJ Kroenecke issued her partially favorable determination that Claimant was not disabled prior to July 1, 2019, but became disabled on that date and continued to be disabled through the date of the ALJ's decision. *Id.* at 15. The Appeals Council then denied Claimant's request for review on April 28, 2021. *Id.* at 2. Claimant timely filed her Complaint on June 27, 2021, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, she "must provide a 'logical bridge' between the evidence and [her] conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ.

*Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

ALJ Kroenecke first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of May 1, 2017. [Dkt. 12-2 at 21.] At step two, the ALJ found that,

> [s]ince the alleged onset date of disability, May 1, 2017, the claimant has had the following severe impairments: multiple sclerosis, hypertension, and depression. Beginning on the established onset date of disability, July 1, 2019, the claimant has had the following severe impairments: multiple sclerosis, hypertension, seizures, and depression.

*Id.* at 21-22. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 22. The ALJ then found that,

> prior to July 1, 2019, the date the claimant became disabled, the claimant had the residual functional capacity [("RFC")] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and no exposure to extreme heat, extreme cold, humidity, wetness, vibrations, or hazards, such as unprotected heights or dangerous machinery. She is able to understand, remember, and carry out short, simple, routine instructions. She is able to sustain attention and/or concentration for at least two-hour periods at a time and for eight hours in the workday on short, simple, routine tasks. She cannot perform fast-paced production work; that is, no assembly line work. The work must have no requirements for driving. She can stand for up to 30 to 45 minutes at a time for a total of up to two hours in the eight-hour workday. She can walk for up to 30 to 45 minutes at a time for a total of up to two hours in the eight-hour workday.

*Id.* at 24. ALJ Kroenecke also found that,

> beginning on July 1, 2019, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except occasional stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and no exposure to extreme heat,

> extreme cold, humidity, wetness, vibrations, or hazards, such as unprotected heights or dangerous machinery. She is able to understand, remember, and carry out short, simple, routine instructions. She is able to sustain attention and/or concentration for at least two-hour periods at a time and for eight hours in the workday on short, simple, routine tasks. She cannot perform fast-paced production work; that is, no assembly line work. The work must have no requirements for driving. She can stand for up to 30 to 45 minutes at a time for a total of up to two hours in the eight-hour workday. She can walk for up to 30 to 45 minutes at a time for a total of up to two hours in the eight-hour workday. In addition to normal breaks, she would need to be off task greater than 15% of the workday and would miss two or more days of work per month.

*Id.* at 28-29.

At step four, the ALJ determined that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 30. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that, prior to July 1, 2019, Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. at 30-31. The ALJ also found that, beginning on July 1, 2019, there were no jobs that exist in significant numbers in the national economy that Claimant could perform. *Id.* at 31. Accordingly, ALJ Kroenecke concluded Claimant was not disabled prior to July 1, 2019, but became disabled on that date and continued to be disabled through the date of the ALJ's decision. *Id.* at 31-32.

## IV. Discussion

Claimant asks the Court to reverse ALJ Kroenecke's decision on the grounds that the ALJ erred by (1) evaluating the significance of the May 2019 MRI of Claimant's brain based on her own lay interpretation, and (2) rejecting the opinion of Claimant's treating neurologist without providing legally sufficient reasons. [Dkt. 14.] The Commissioner responds that reversal is inappropriate because the ALJ based her decision on substantial evidence. [Dkt. 15.] As explained below, the Court agrees with Claimant that the ALJ's decision must be reversed.

5

### A. The ALJ Erred by Failing to Adequately Consider Claimant's May 2019 MRI

Claimant first argues that, after incorrectly asserting that there was not a corresponding medical opinion, the ALJ improperly played doctor with respect to a May 2019 MRI of Claimant's brain. [Dkt. 14 at 13.]

Due to her decades-long history of multiple sclerosis, Claimant underwent several MRIs of her brain beginning in February 2014. In July 2019, John Emmett, PA-C, noted that, "over the past 2 years since the birth of her daughter," Claimant had reported "some sense of insidious decline over time." [Dkt. 12-8 at 178.] PA-C Emmett opined as follows:

> There is an MRI of the brain done in May 2019 compared against one from April 2015 and it reads a definite progression in the number and burden of white matter abnormalities consistent with demyelination although no active contrast enhancement. . . .
>
> Clinically, I think there are 2 distinct possibilities. Firstly, the patient may be in a more secondary progressive course without any sense of sharp decline and with more slow and steady decline over time. The other possibility is that she is/was having several small relapses in the postpartum period as evidence by changes on MRI brain. . . . Ultimately, I think I would favor the latter as the MRI does demonstrate evidence of ongoing [central nervous system] demyelination.

*Id.* David Mattson, MD, co-signed this assessment. *Id.*

With regard to the May 2019 MRI, ALJ Kroenecke stated that, "[w]hile [Claimant's] brain MRI from May 2019 showed progression since April 2015, there are no corresponding treatment notes to explain any effects." [Dkt. 12-2 at 27.] The ALJ then used this reasoning to conclude that the May 2019 MRI did not support a finding of disability. *Id.* However, as established above, there was, in fact, a medical explanation provided by PA-C Emmett and endorsed by Dr. Mattson. Therefore, the ALJ's assertion that the MRI lacked any corresponding explanation is incorrect. The ALJ was required to evaluate the persuasiveness of PA-C Emmett's

6

opinion by articulating, at a minimum, whether the opinion is supported by and consistent with the evidence in the record. 20 CFR § 404.1520c. Her failure to do so is reversible error.

Assuming, for argument's sake, that the ALJ had been correct that the record lacked any corresponding explanation of Claimant's May 2019 MRI, ALJ Kroenecke was still "under an obligation to develop a 'full and fair record.'" *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (citing *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)); *see* 20 CFR § 404.1512 ("[B]efore we make a determination that you are not disabled, we are responsible for developing your complete medical history."). Indeed, the regulations provide that, if the ALJ finds evidence to be insufficient, meaning that it does not contain all the information needed to make a determination, she should recontact the claimant's medical source, request additional existing evidence, ask the claimant to undergo a consultative examination, or ask the claimant for more information. 20 CFR § 404.1520b. The Seventh Circuit has routinely made clear that "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *cf. Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Stage v. Colvin*, 812 F.3d 1121, 1125-26 (7th Cir. 2016); *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). Here, ALJ Kroenecke did not do so.

The ALJ acknowledged, and the Commissioner does not deny, that the May 2019 brain MRI showed evidence of progression of Claimant's multiple sclerosis since April 2015. [Dkt. 12-2 at 27; Dkt. 15 at 8.] Yet, to support her decision, the ALJ emphasized "the consistent assessment of stable MS and no exacerbations prior to July 2019." [Dkt. 12-2 at 27.] While the

Commissioner correctly states that it is the ALJ's job to determine a claimant's RFC,[3] this does not mean that an ALJ is allowed to interpret medical evidence on her own. Indeed, "without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with [her] assessment." *Akin*, 887 F.3d at 317. Here, like in *Akin*, after disregarding PA-C Emmett's explanation—which is the only opinion on Claimant's May 2019 MRI—the ALJ did not seek any additional expert opinion to interpret the imaging. As the *Akin* court underscored, "the MRI results may corroborate [the claimant's] complaints, or they may lend support to the ALJ's original interpretation, but either way the ALJ was not qualified to make [her] own determination without the benefit of an expert opinion." *Id.* at 317-18. That is the case here: the ALJ impermissibly played doctor and determined the May 2019 MRI was not supportive of a finding of disability without any medical expert's input. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). This constitutes reversible error.

## B.  The ALJ Erred by Improperly Rejecting Dr. Harris's Opinion

Similarly, Claimant also argues that the ALJ neglected to give legally sufficient reasons for rejecting the opinion of Claimant's treating neurologist, Donald Harris, MD. [Dkt. 14 at 16.]

---

[3] The Commissioner also points out that the ALJ noted Claimant's activities of daily living, including caring for her new baby, driving her children to school and work, and doing household chores, as reasons that supported a finding of non-disability. Although it was appropriate for the ALJ to consider all relevant evidence when assessing Claimant's RFC, and although Claimant does not address this issue, the Court notes that an ALJ should not place "undue weight" on household or daily activities. *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006). More importantly, the evaluation of Claimant's daily activities is irrelevant to the interpretation of the May 2019 MRI result.

After treating Claimant since "well before 2013," Dr. Harris provided a Multiple Sclerosis Medical Statement in April 2020. [Dkt. 12-8 at 183-84.] Dr. Harris opined that Claimant has a "long history of MS . . . with progressive decline in past 5 years." *Id.* at 184. He reported that Claimant could stand less than fifteen minutes at a time; stand less than one hour per eight-hour workday; lift five pounds occasionally; lift less than five pounds frequently; and occasionally use her bilateral arms to work. *Id.* at 183. Dr. Harris also stated that, because Claimant "is disabled and is not able to work," she would be absent from work "more than four days per month." *Id.* at 184.

The relevant part of the ALJ's analysis, in which she found Dr. Harris's opinion unpersuasive, is as follows:

> These opinions are not persuasive for this period because, as discussed above, her exams showed only mild proximal weakness with hip flexion, slight dysmetria on heel to shin testing bilaterally, and slightly wide based gait. Her exams were otherwise normal, including no other weakness, normal reflexes, and intact sensation. Further, in July 2017 and January 2018, her neurologist noted she had remained stable and had not had any new symptoms suggestive of exacerbation. Given this lack of support for these opinions, I cannot find the opinion persuasive.

[Dkt. 12-2 at 28.]

Claimant argues that the ALJ erred by taking the stability of Claimant's multiple sclerosis as evidence undermining Dr. Harris's opinion. [Dkt. 14 at 19.] Indeed, the ALJ used Claimant's July 2017 and January 2018 neurology visit reports to support her RFC assessment, which provided that Claimant's "blood pressure was mildly elevated," but she "remained stable" and she "had not had any new symptoms suggesting she had experienced MS exacerbations," [Dkt. 12-7 at 247 (July 2017)], and that Claimant "had been doing well in the six months since her last visit" and "had not experienced any symptoms suggesting exacerbation of her MS," [Dkt. 12-7 at 251

9

(January 2018)]. However, as Claimant points out, the stability of a condition does not amount to the absence of limitations nor undercut its severity. See *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is capable of doing light work."). Also, even though Claimant reported that she "had been doing well" in January 2018, *see* [Dkt. 12-7 at 251], it should not be surprising that "many factors may interact to elicit a response that one feels well." *Micus v. Bowen*, 979 F.2d 602, 606 (7th Cir. 1992). As such, this kind of singular response, "without adequate analysis, cannot be taken as objective evidence that the respondent is not disabled." *Id.* Moreover, Dr. Harris provided his opinion in April 2020, and it is entirely reasonable that a patient's prognosis may fluctuate and that Claimant's symptoms may have worsened since the 2017 and 2018 notations. The perceived stability of Claimant's multiple sclerosis years prior does not amount to substantial evidence undermining Dr. Harris's opinion.

In addition, Claimant argues that the ALJ failed to consider the "small relapses" in her condition after she gave birth in May 2017. [Dkt. 14 at 20.] To support her RFC findings, the ALJ introduced medical records that appeared to be consistent with her conclusion. In particular, as already noted, the ALJ emphasized Claimant's July 2017 and January 2018 examination reports, which showed no new symptoms suggesting Claimant had experienced MS exacerbations. [Dkt. 12-2 at 28; Dkt. 12-7 at 247, 251.] However, it is well understood that when evaluating medical evidence, "an ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider 'all relevant evidence.'" *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (Citing *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000); *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)). In particular, an ALJ "cannot ignore a line of evidence

10

contrary to her conclusion." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). This is especially true when the evidence relied on is outdated. *See Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). Here, contrary to the Commissioner's claim that the ALJ found Dr. Harris's opinion was not consistent with or supported by other evidence in the record, there is evidence in the record that supports Dr. Harris's opinions which the ALJ neglected to acknowledge. As Claimant points out, the May 2019 MRI of her brain revealed that she "is/was having several small relapses in the postpartum period…. MRI does demonstrate evidence of ongoing [central nervous system] demyelination. . . . ." [Dkt. 12-8 at 178.]

      Having disregarded PA-C Emmett's and Dr. Harris's opinions, the ALJ was left with an "evidentiary deficit" that she could not reasonably fill with her lay interpretation of the evidence. *Suide v. Astrue*, 371 Fed. App'x 684, 690 (7th Cir. 2010); *Vincent G. v. Saul*, 2020 WL 3046435, at *9 (N.D. Ind. June 8, 2020). The reasoning for this rule is sound: without the benefit of an expert opinion, ALJs are simply not qualified to make their own medical determinations. *Akin*, 887 F.3d at 318. Rather, in the face of such a deficit, ALJ Kroenecke "should have summoned a medical expert who could have reviewed all of the medical evidence, and would have offered limitations that were grounded in the evidence." *Jennifer B. v. Saul*, 2020 WL 2520996, at * 8 (N.D. Ind. May 18, 2020) (citing *Daniels v. Astrue*, 854 F. Supp. 2d 513, 523 (N.D. Ill. 2012) ("Once the ALJ determined that [the medical opinions] were insufficient and unsupported by the medical evidence, the ALJ had a duty to conduct an appropriate inquiry to fill that gap. What the ALJ could not do was fill the gap on her own.")).

      In response, the Commissioner asserts that given the large number of the medical evidence record, the ALJ was not required to recontact medical sources. [Dkt. 15 at 9.] This

argument is unpersuasive. The principle that an ALJ may not play doctor does not depend on the quantity of medical evidence in the record. Ultimately, "it was the ALJ's responsibility to recognize the need for further medical evaluations of [Claimant's] conditions before making her residual functional capacity and disability determinations." *Suide*, 371 Fed. App'x at 690. Indeed, without at least some reliance on any medical opinions, substantial evidence is lacking from the ALJ's RFC determination. ALJ Kroenecke's failure in this regard constitutes reversible error. On remand, if the ALJ again rejects all medical opinions of record, she must take care to seek additional medical opinions to fill that evidentiary gap before formulating Claimant's RFC.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 7 JUL 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.